The United States v. Andry Mr. Mitchell Good afternoon, Your Honor. Court, please report. My name is Gregory Mitchell representing Mr. Colbi Andry Your Honor, I want to start off with just indicating that there's basically two issues and the reason why I didn't do a reply brief is because it's sort of circular. And as I was trying to prepare for argument today, I wanted to identify essentially why I think that the 11th Circuit way to deal with the multiple material variance argument is probably a better approach to ensure that Mr. Andry doesn't suffer the kind of substantial prejudice that occurred in this case. If you take a look at it from the case at trial, it was clear that the jury finds that Mr. Andry's conspiracy or his defense was a smaller part of the larger one, then they can still find him guilty. And I understand that was the conspiracy within the larger one. Then what was, in essence, that they find he was guilty of in terms of when he became involved? What was the loss amount that he was accounted for? When did he learn about the other aspects? And that was where the issue came. And in the 11th Circuit, they tell you is that you have to be involvement in the larger one into the other person as defined. And clearly, that's not the standard here. But in this particular case with these facts, that's exactly what happened. And that's exactly how the court eventually instructed the jury that, listen, Mr. Pope has admitted that he's involved in all of these conspiracies. He admitted that it was his plan. He admitted that he supervised Mr. Andry and everyone else. And in fact, he put it all together with the idea that they were going to have a legitimate business. The only question was that the evidence would Mr. Pope never intended to have a legitimate business. And the question that the jury had to decide is whether or not Mr. Andry and those who all were involved had the same knowledge about what was intended when it started. Well, how many transactions was he convicted of? Judge, there was essentially, the evidence was that the charge was that this was this overriding conspiracy that started in 2009, but there was like five or six different entities. Mr. Andry, clearly, when the government pled the indictment, they named them all as if everyone was involved in all five of the different for him specifically, because he was involved sort of initially, then there was a break, and then he was more integrally involved. Well, actually, there's three phases of the case, Judge. The individuals actually worked at a legitimate mortgage company back in 2008 with all the mortgage and the free money and everything else, refinancing. And they all worked in a legitimate company together with the very same roles. In 2008, Mr. Pope got the idea, because it was starting to collapse, that those three individuals and others that he knew in the business could start their own company to continue doing that. And so the first issue was, was the agreement to start this new mortgage company, this mortgage modification company, was this an idea from the before? It wasn't fraud when I was working for Greenleaf and the prior mortgages. I'm doing the exact same thing over here. I did not understand that this was fraud. What we know from the evidence is that the people who Mr. Pope brought in were the same workers. They were the same people. They were the same folks who were working. They were doing the exact same thing. And essentially, none of them were charged with being part of a control agent was Mr. Andre. And there was no evidence that he was in control of anything, that he was involved in any organizational control or anything at all. What about his brother? He had some control? His brother he brought in to simply be an agent for him to go out because he didn't go and talk to the individual clients. And in fact, the important part of this, the evidence came out that the initial clients that were brought in when the EAC was first financed were family members, friends from the church and the people who brought their sisters and their brothers and the people that were working were referring people to this company. And it wasn't until after Mr. Pope, a year later, decided to take his entire operation and move it and leave Mr. Andre standing there to try to recover something that he did, that he realized that Mr. Pope had something totally different going on. And that's where the majority of the loss went. So the argument that I'm making here, Judge, is that if we start off in the Seventh Circuit that says it's OK to convict him of the larger conspiracy if you find that the smaller one isn't part of it. The question is, is it then fair to sentence him as if all of the larger conspiracy is relevant conduct, which is exactly what the court did here. Every single time that the plaintiff or the defendant tried to pull out the area of his conduct, Judge Leinenweber clearly said, I heard the trial, and I think the comment was, I believe that it was a fraud from the beginning. And the question is, well, that's not clearly what the jury decided and that wasn't what the jury's instruction was. And I get it. The law in the Seventh Circuit says you don't have to have that. Once you're in it, you get all of the relevant conduct. But in this particular case, in this particular case, what they're doing with the way they charge is bringing all of Pope's conduct and transfer it to Mr. Andrew from the leadership role and everything else, notwithstanding all the evidence that he actually had no control, no supervision or anything. Counsel, let me ask. I guess I'm a little confused because obviously the variance issue and its relationship to the sentencing loss amount or that relationship is pretty obvious. But given our decision in White, U.S. against White, which essentially approved the instruction, as I understand it, that the judge gave here, that would seem to take care of the variance problem at least as far as conviction goes. It is, Judge. And that's why I said it's sort of circular because when you start thinking about the prejudice to Mr. Andrew... The prejudice comes at the sentencing. Exactly, Judge. Okay, well, but I thought you were asking us also to vacate the convictions. Because it's not clear because of the way he was sentenced, Judge, and what the jury found was that in fact that it was there, that in fact it was part of the same one. That's what they found clearly. And if you use your standard, the conviction has to stay without any question. But if you indicate here that the Eleventh Circuit indicates this transference issue is an important part, and in fact it resulted in substantial prejudice, you can apply its standard to reverse the conviction. That's the circular part of the argument. That if in fact you look at the issue of the substantial prejudice to Mr. Andrew because of the way the multiple variance is used here... Does the Eleventh Circuit say that prejudice in terms of calculations of relevant conduct is sufficient to require a new trial on the convictions? No, the language that I was citing, Judge, and that I referred from in my brief is primarily the transfer of proof from one defendant to the other. That's the issue that I have that goes to the conviction. And I understand that clearly, as the government points out, I don't explain why it is, but again as I started, it's circular. What ends up happening is that if you essentially argue in the Seventh Circuit that the proof provides my involvement for only a small portion, and then by admitting that the prejudice you suffer is all of the punishment and the like, then the real concern is that you should make a determination factually, the judge at sentencing or some point, whether or not this issue of are we talking about the relevant conduct as transference from simply someone else, or are we finding it independent from the person who's being sentenced? In this case, Judge, there's no evidence and there was nothing presented to indicate that Mr. Andree's sentence was unique to what was found for what he was involved in. In fact, the jury was not allowed or even instructed to even measure it out. They simply said that if you find it as part of the overall conspiracy, then you can convict him and then we get what we want. The problem is, again, it's circular. If the government wants to get the best sentence, then you charge it with the overriding conspiracy with the largest amount of dollars. You convict him from a part, and then you simply transfer that conduct over as relevant conduct. That's why I argue, Judge, that the better solution here would be to reverse the conviction and apply the Eleventh Circuit. Notwithstanding that, I would ask to at least refer it back for sentencing purposes because, again, this finding of evidence that somehow it was a fraud at the beginning and, therefore, he was part of the leader crew and he supervised folks was not the evidence that was presented. Judge Lyon and Weber in the district court had an obligation to make a factual specific finding concerning his leadership control and direction as well as the loss amount. Mr. Mitchell, if we were to accept that invitation and send it back for the review of the sentencing? Yes, Judge. And it was limited, as you would argue, I would assume, to certain specific periods of time? Yes, Judge. That's exactly what I would do. What would be the advisory range? Would it change? Yes, Judge. As it stands right now, and I believe I put it in my argument. It's 63 to 78 months. That is correct. And he received 48. But mine would have cut that in half. I see. My guidelines would have reduced it by eight levels and the leadership would have been gone. I also argued at the sentencing hearing that he, in fact, had accepted responsibility because from the very beginning he had admitted the portion of his smaller role in the conspiracy. We went to trial primarily because the government wanted the admission that he was part of the larger one from the very beginning. And so my calculations indicated that it was errant to apply that whole standard. Thank you. Thank you, Mr. Mitchell. Mr. Fuller. Good afternoon. May it please the Court. There was nothing improper at this trial or sentencing of Mr. Andre. Your Honor, he was charged with six counts of mail fraud that dated from the later period of the scheme, 2011-2012. There was no charge of conspiracy there, right? There was a charge of a scheme. There was no conspiracy charge. The allegation was that the scheme had started years earlier in the beginning of 2009 at a company called EAC, which the defendant had founded with Everett Pope. The C in EAC stood for Colby, Colby Andre, his first name. So the government had introduced evidence to prove the scheme began in 2009 and continued up through 2011-2012 with the charged counts of mail fraud. And the evidence was sufficient to convict Mr. Andre of that scheme and those executions. The EAC scheme and the scheme in the later years was the same. It was a fraud in the sale of loan modification services. The same false representations were used in the early years and in the later years. The same people, those false representations were, stop paying your mortgage. You will qualify for a lower mortgage payment. Don't worry. We have attorneys to help work it out if there's any problems. And we guarantee results. So stop paying your mortgage, pay us, and you'll have no problem. Of course, those same false representations were true in the early years and in the later years. And the same co-schemers were involved in the early years and in the later years. Everett Pope, the defendant, and the defendant's brother. There was testimony, as I said, that the defendant was one of the founders of EAC. There was testimony from a defense witness at trial that the defendant had made those false representations while working at EAC. And, of course, the victims who testified about the defendant's conduct in the later years testified about the same false representations. So we think that there was more than sufficient evidence to convict Mr. Andre of the entire scheme beginning in 2009, continuing until 2012. But even if there weren't, even if the evidence was only confined to the jury had found only credible, the evidence regarding the later years, that was sufficient to convict him under the instructions that the jury received. And those instructions were proper under this court's law. And I don't read a defense brief to argue that the instructions were improper. Was there any indication from the jury that they struggled with this problem about scope? I'm not aware of that, Your Honor. The jury did convict him of all six counts in the superseding indictment, but I'm not aware of the length of time of the deliberations. I mean, I was referring to questions of some kind. Or questions. I'm not aware of either. Now, when it comes to loss amount, you know, the argument is somewhat different. It's not a proof beyond a reasonable doubt. Participation in a subset of this charge scheme is sufficient to convict. The district court had to find that the entire loss amount sought by the government was reasonably foreseeable and within the scope of the scheme that he engaged in with his co-schemers. The loss amount that the government sought and that the district court found was limited to the loss in which the defendant participated. It did not embrace the entire course of the swath of Everett Pope's fraud on loan modification customers. It was confined to, conservatively and reasonably so, confined to the fraud amount that the defendant himself had participated in. Now, the district court found that, you know, whatever the jury might have found about the conviction, whether it was based on the entire scheme or a subset of the scheme, the district court properly found that that entire amount, $122,000, was foreseeable to and attributable to the defendant. And for the same reasons I just alluded to. The scheme was similar, participants were similar, and so on. The only other objection is to the supervisory role enhancement, but as defendant concedes here in this court, he supervised his brother by sending him out to close deals with prospective loan modification customers. And there's no contention that the fraud scheme was not otherwise extensive or having five or more other participants. Since there was testimony that EAC had at least 15 employees. So, with his supervision of his brother, with the five or more other participants, the district court properly assessed him with that role enhancement. So, we ask that the court affirm his conviction, defend his conviction, and sentence. Thank you. Mr. Mitchell. The two troubling issues for the beginning of the 2009 EAC stand for Everett Pope, Andrew Ramsey, and Kobe Andrew Ramsey. Andrew Ramsey was never charged. In fact, the FBI took his statement and the government knew of his statement where he indicated, no, I just simply work for Mr. Pope, just like Kobe Andrew, and that's why I cited my brief. They were simply employees at the prior place. He described how it started, what role he had, and he identified his role exactly like Mr. Andrew. And he basically told the FBI at the time that he had nothing to do with it, neither he nor Andrew had anything to do with the creation or anything else. This was Mr. Pope's company. That's clear. And so what you have here is that if this was fraud from the beginning, then those individuals who were part of the scheme at the beginning, especially alleged incorporators, had to know. But there's no evidence that this person was charged or knew of anything, and Mr. Andrew indicated that he didn't know either. What we have is that when the administrative hearing finally came, he showed up. He actually was named because he was on the manager of the incorporation and didn't even know it. That's the testimony as well. The last thing is the leadership role. The only issue if the scheme involved 15 or more, the only way it applies if, in fact, Mr. Andrew was a leader for EAC and EAC was still part of it at the time. The only evidence that I would ask that's on the record is that Mr. Andrew, when he supervised his brother, there was the two of them, and the only other person that was part of his scheme was Mr. Polk. There was not 15 employees for Mr. Andrew's company. There was not 15 employees for any of the smaller schemes that he was cited for. Everett Polk had his own scheme. And, in fact, when Mr. Andrew agreed to go with his own scheme with his brother, the only other two people were his brother that he supervised and the only other person involved in the scheme was Mr. Polk. There's not 15 folks associated with Mr. Andrew. There's 15 people associated with EAC, but as Mr. Polk testified at his trial, EAC stopped existence. He changed the name, he moved it, and it was his company from that point on. And so the idea, as the Seventh Circuit says, is that you have to not simply say that you have a role. You have to actually exercise some control and decision-making to be supervision. So I would indicate, Judge, for sentencing purposes alone, this case should be remanded. Thank you. Thank you, Mr. Mitchell. Thank you, Ms. Fullerton, Mr. Fendi. Mr. Mitchell, you have the additional thanks of the court for accepting the appointment on appeal. Case is taken under advisement. The court will stand in recess. Thank you. Thank you.